**FILED**
2007 Sep-28  AM 10:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

MORGAN T. JONES,

     Appellant,                      CV: 07-J-1398-NE

v.

GENERAL MOTORS ACCEPTANCE
CORPORATION and BILL SMITH
PONTIAC, BUICK, GMC, INC.,

     Appellees.

## **MEMORANDUM OPINION**

This matter is before the court as an appeal from the Bankruptcy Court, pursuant to 28 U.S.C. § 158(a). The parties have filed appellate briefs which the court has reviewed. This court finds, in accordance with Federal Rule of Bankruptcy Procedure 8012, that the facts and legal arguments are adequately presented in the briefs and record and the decisional process will not be significantly aided by oral argument.

### **Factual Background**

On June 6, 2006, Morgan T. Jones purchased a 2006 GMC 1500 pickup truck from Bill Smith Pontiac Buick GMC, Inc. ("Bill Smith"). AP-17 at exhibit

1

A.[1]  Bill Smith agreed to extend credit to Mr. Jones so that he could purchase the vehicle. *See Id.*  In conjunction with the sale, the parties executed two documents – the "Retail Installment Sale Contract GMAC Flexible Finance Plan" ("RISC") and the "Stonebridge Casualty Insurance Company GAP Asset Protection Schedule" ("GAP Schedule").  AP-17 at exhibits A & B.

Along with the purchase of his vehicle, Mr. Jones agreed to purchase Guaranteed Automobile Protection Insurance ("GAP Insurance")[2] for $330.00.  AP-17 at exhibit B.  The RISC included the $330.00 premium for GAP insurance in the "amount financed."  AP-17 at exhibit A.  This $330.00 charge is disclosed on the RISC in two sections.  Under the heading "Itemization of Amount Financed," the $330.00 charge is listed on line 4B.  *Id.*  Then, in the box labeled "Insurance," the $330.00 charge is listed under the heading "Other Insurance."  *Id.*  Also in the box labeled "Insurance" is the following statement: "You are not required to buy any other insurance to obtain credit.  Your decision to buy or not buy other insurance will not be a factor in the credit approval process."  *Id.*  Mr.

---

[1]Citations to the record are as follows: documents from the main bankruptcy file are cited as BK-.  Documents from the adversary proceeding file are cited as AP-.

[2]GAP insurance is a form of coverage offered to consumers that covers the shortfall between the applicable insurance coverage and any amount still owed in the event a vehicle is determined to be a total loss as a result of theft or damage.  *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1062 n. 2 (11th Cir. 2004).

Jones signed the RISC requesting GAP insurance below the sentence "I want the insurance checked above." *Id*.

The $330.00 charge for GAP insurance is also disclosed on the GAP Schedule in the box labeled "GAP Asset Protection Cost." AP-17 at exhibit B. Below the applicant information on the GAP Schedule is the following disclosure:

> I (Buyer) understand that the purchase of GAP Asset Protection is not required nor is it a condition of the extension of credit. I understand that GAP Asset Protection will not be provided unless I (Buyer) sign below and agree to pay the GAP Asset Protection cost set by the Dealer/Lender/Lessor as identified above.
> I (Buyer) understand that if I desire GAP Asset Protection, I do not have to obtain such coverage from the Dealer/Lender/Lessor. I may obtain such coverage from anyone I choose that is acceptable to the Dealer/Lender/Lessor.
> I (Buyer), whose signature appears below, acknowledge that the information contained above is, to the best of my knowledge and belief, true.

AP-17 at exhibit B. Mr. Jones signed the GAP Schedule indicating that he wished to purchase GAP insurance before he signed the RISC. Affidavit of Ben Armstrong at AP-9. Sometime after the parties executed the RISC and the GAP Schedule, Bill Smith assigned its interest in the RISC to General Motors Acceptance Corporation ("GMAC"). Amended affidavit of Jackie Greenburg at AP-17.

On September 28, 2006, Mr. Jones filed a petition for bankruptcy relief

3

under Chapter 13. BK-1. On October 12, 2006, GMAC filed a proof of claim in the amount of $18,691.91. AP-1 at exhibit A. On November 6, 2006, Jones filed this action claiming that Bill Smith and GMAC had violated the Truth in Lending Act ("TILA") by not making certain required disclosures about GAP insurance to Mr. Jones. BK-15, AP-1. On November 17, 2006, Jones filed amended Schedules B and C to add the lawsuit and an amended Chapter 13 plan providing that any non-exempt lawsuit proceeds would be paid to the Chapter 13 trustee for distribution. BK-19 & 20. The amended plan called for GMAC's claim to be paid in full with 9% interest. BK-20.

On December 7, 2006, Mr. Jones' Chapter 13 plan was confirmed by the bankruptcy court. BK-24. The confirmation order provided for GMAC's claim to be paid in full. *Id.* The confirmation order did not mention Mr. Jones' lawsuit against Bill Smith and GMAC. *See Id.*

Both Bill Smith and GMAC filed motions for summary judgment. AP-9 & 17. On June 13, 2007, the bankruptcy court granted the defendants' motions for summary judgment. AP-70. The bankruptcy court held that all of the required TILA disclosures were made to Mr. Jones in the RISC and the GAP Schedule. AP-69. In the alternative, the bankruptcy court held that GMAC's liability is limited as an assignee of the RISC and the complaint is barred by res judicata.

4

AP-69.

## Standard of Review

The district court sits as an appellate court in an appeal of a bankruptcy court decision. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994). The district court applies a *de novo* standard of review to the bankruptcy court's entry of summary judgment. *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1335 (11th Cir. 2001). The clearly erroneous standard is not appropriate in a district court's review of a bankruptcy court's entry of summary judgment because it is not the court's role when reviewing a motion for summary judgment to make findings of fact. *Id.*

Federal Rule of Civil Procedure 56 is made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 7056. Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained the summary judgment standard as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary

5

> judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id.* at 322-23 (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence

6

and factual inferences arising therefrom in the light most favorable to the

nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The substantive law will identify which facts are material and which are irrelevant.

*Anderson,* 477 U.S. at 248. All reasonable doubts about the facts and all

justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of*

*Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted. *Id.* at 249. The basic

issue before the court on a motion for summary judgment is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Id.* at 251-252.

### Discussion

Mr. Jones claims that Bill Smith and GMAC unlawfully included the

$330.00 premium for GAP insurance in the amount financed. The TILA requires

premiums for GAP insurance to be included in the finance charge unless certain

disclosures are made to the consumer. Bill Smith and GMAC filed separate

motions for summary judgment arguing that the required disclosures were made

and that the GAP insurance premium was properly excluded from the finance

7

charges and included in the amount financed.  In the alternative, the defendants argue that Mr. Jones' claims are barred by res judicata and GMAC argues that its liability is limited as an assignee of the contract.

The stated purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).  To implement the statute's declared purpose of promoting informed use of credit, the TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).

When a creditor sells credit insurance products to a consumer in connection with a credit transaction, the TILA "requires the creditor to make certain disclosures to buyers before they become obligated on an RISC in which the creditor has excluded the charge for such insurance from the finance charge and included it in the amount financed." *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060, 1065 (11th Cir. 2004).  Regulation Z, which was issued by the Federal Reserve Board in support of the TILA, sets forth the specific content and timing of

8

the required disclosures. *Id.* In this case, Jones asserts that the defendants failed to make the required disclosures as a precondition to excluding the GAP charges from the finance charge.

The term "finance charge" is defined by the TILA as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Regulation Z specifically provides that the term finance charge includes "[c]harges or premiums paid for debt cancellation coverage written in connection with a credit transaction, whether or not the debt cancellation coverage is insurance under applicable law." 12 C.F.R. § 226.4(b)(10).

To exclude certain insurance premiums and debt cancellation fees from the finance charge, Regulation Z requires creditors to provide the disclosures listed in 12 C.F.R. § 226.4(d). 12 C.F.R. § 226.18(n). Section 226.4(d)(3)(i)(A-C) provides that the finance charge must include any charges or premiums paid for debt cancellation coverage, unless the following conditions are met:

> (A) The debt cancellation agreement or coverage is not required by the creditor, and this fact is disclosed in writing;
> (B) The fee or premium for the initial term of coverage is disclosed. If the term of coverage is less than the term of the credit transaction, the term of the coverage also shall be disclosed . . .;

9

(C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures specified in this paragraph. Any consumer in the transaction may sign or initial the request.

Regulation Z mandates that these disclosures be made "clearly and conspicuously in writing." 12 C.F.R. § 226.17(a)(1). The sufficiency of the disclosures must be examined from the "standpoint of an ordinary consumer, not the perspective of a Federal Reserve Board member, federal judge or English professor." *Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803, 806 (7th Cir. 2001).

*I. Whether the Three Disclosures Required by the TILA for Excluding the Premium for GAP Insurance from the Finance Charge Were Made to Mr. Jones.*

Mr. Jones admits that Bill Smith and GMAC made the second and third disclosures required for excluding the GAP insurance premium from the finance charge. Mr. Jones claims that Bill Smith and GMAC violated the TILA by not clearly and conspicuously disclosing to him that he was not required to purchase GAP insurance. The RISC and the GAP Schedule both disclose that the borrower is not required to purchase GAP insurance. The issue before the court is whether the RISC and/or the GAP Schedule make this disclosure clearly and conspicuously.

In the box labeled "Insurance," the RISC states that "You are not required to buy any other insurance to obtain credit. Your decision to buy or not buy other

10

insurance will not be a factor in the credit approval process." AP-17 at exhibit A.

On its face, this disclosure seems clear. However, it is made unclear when read in

conjunction with the rest of the information regarding insurance. As the

bankruptcy court held, a consumer could reasonably understand the disclosure to

apply only to the credit insurance products listed immediately below it and not to

the other insurance products, which are listed separately. Therefore, viewed in the

light most favorable to Mr. Jones, the court finds that the RISC did not clearly and

conspicuously disclose to Mr. Jones that he was not required to purchase GAP

insurance.

Because the disclosure in the RISC is not clear and conspicuous, the court

must determine whether the disclosure in the GAP Schedule is clear and

conspicuous. The GAP Schedule states under the heading **APPLICATION FOR**

**INSURANCE**: "I (Buyer) understand that the purchase of GAP Asset Protection

is not required nor is it a condition of the extension of credit." AP-17 at exhibit B.

Mr. Jones argues that this otherwise clear disclosure is made unclear by the second

disclosure on the GAP schedule that states: "I (Buyer) understand that if I desire

GAP Asset Protection, I do not have to obtain such coverage from the

Dealer/Lender/Lessor. I may obtain such coverage from anyone I choose that is

acceptable to the Dealer/Lender/Lessor." *Id*. This second disclosure concerns the

11

consumer's rights if he chooses to purchase GAP insurance.   It does not make the

voluntariness disclosure unclear because the second disclosure has nothing to do

with whether the consumer is required to purchase GAP insurance.  Furthermore,

this second disclosure is separated by a paragraph from the first disclosure.

Therefore, the court finds that the average consumer would have understood from

the disclosure on the GAP Schedule that he was not required to buy GAP

insurance.

      The next issue is whether the GAP Schedule conspicuously disclosed to Mr.

Jones that he was not required to purchase GAP insurance.  Mr. Jones argues that

the voluntariness disclosure is not conspicuous because other non-TILA

disclosures, such as arbitration, are more conspicuous.  However, the TILA does

not require the GAP disclosures to be the most conspicuous disclosures – just that

they be conspicuous.  *Compare* 12 C.F.R. § 226.17(a)(1) (requiring TILA

disclosures to be made clearly and conspicuously), *with* 12 C.F.R. § 226.17(a)(2)

(requiring the terms "finance charge" and "annual percentage rate" to be more

conspicuous than any other disclosure).

      Conspicuousness is a question of law under the TILA that is governed by an

objective, reasonable person approach.  *Rivera v. Grossinger Autoplex, Inc.*, 274

F.3d 1118, 1122 (7th Cir. 2001).  In *Rivera*, the Seventh Circuit held that an

12

addendum to a financing agreement providing for GAP coverage was clear and conspicuous. *Id*. The first disclosure at issue read as follows: "AGREEMENT - Although *not required* to do so, YOU have elected to participate in this Financial GAP Program." *Id*. Likewise, the second disclosure stated: "ENROLLMENT - YOU understand and agree that YOUR acceptance or rejection of enrollment in this Program is *voluntary* and is *not a condition precedent to, or a consideration required* to obtain credit." *Id*. The court held that the above disclosures were conspicuous because the provisions were labeled and capitalization was used to draw the reader's attention to material portions of the agreement. *Id*.

In *Rodriquez v. Lynch Ford*, 2004 WL 2958772 * 10 (N.D. Ill.), the court held that a GAP addendum did not conspicuously disclose that GAP insurance coverage is not required. The court explained the reasons for its holding as follows: "unlike the disclosure at issue in *Rivera*, the Lynch Ford GAP agreement disclosure does not use capital letters or bold face type to draw attention to its terms. In fact, the disclosure is printed at the bottom and in the smallest type on the page." *Id*.

In this case, Bill Smith does not use capitalization, bold face type, or italics to draw the reader's attention to the required disclosures. While the disclosures in the GAP Schedule do appear in a slightly lighter and smaller font than the

13

language that immediately follows the disclosures, the disclosures are certainly not in the smallest font on the page and are not so small that they are difficult to read. Moreover, the disclosures are the first text under the consumer's information and they are immediately below the heading **APPLICATION FOR INSURANCE**, which would draw the reader's eye. The court finds that the average consumer would have read the disclosures and understood that GAP coverage was not required. Therefore, the first requirement for excluding the premium for GAP insurance from the finance charge is satisfied. Because Mr. Jones concedes that the second and third disclosures were made to him, the court finds that all three disclosures were clearly and conspicuously made to Mr. Jones.

*II. Whether the Three Required Disclosures Were Made Before Consummation of the Transaction.*

Having determined that the three disclosures were clearly and conspicuously made to Mr. Jones, the next issue presented is whether the three disclosures were made to Mr. Jones at the proper time. Regulation Z provides that the creditor shall make the required disclosures "before consummation of the transaction." 12 C.F.R. § 226.17(b). Consummation is defined as the "time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). Bill Smith's finance manager, Ben Armstrong, submitted an

14

affidavit which states that Mr. Jones signed the GAP Schedule before signing the

RISC. Affidavit of Ben Armstrong at AP-9. The RISC is the document that

contractually obligated Mr. Jones on the credit transaction. Because all of the

disclosures were made before Mr. Jones signed the RISC, the court finds that all of

the disclosures were made to Mr. Jones before he became contractually obligated

on the transaction.

III. *Whether the Three Required Disclosures May Be Made Across Two*
*Documents.*

Mr. Jones argues that it was improper for the bankruptcy court to look to a

document besides the RISC to find the required disclosures. Regulation Z requires

that "[t]he disclosures shall be grouped together, shall be segregated from

everything else, and shall not contain any information not directly related to the

disclosures required under § 226.18." 12 C.F.R. § 226.17(a)(1). However,

footnote thirty-eight to section 226.17(a)(1) expressly allows the insurance and

debt cancellation disclosures to be made separately from other required

disclosures.

Mr. Jones has failed to cite any cases in which the court held that it was

improper to find the required disclosures in multiple documents. In *Matthews v.*

*Johnson (In re Matthews)*, 2007 WL 1589553 *2-3 (Bankr. M.D. Ala. 2007), the

15

court had no issues with looking to a document entitled "Certificate of Insurance Guaranteed Automobile Protection" to find the three required disclosures. In *Rivera*, 274 F.3d at 1120, the Seventh Circuit held that disclosures in an addendum to the RISC were sufficient to meet the TILA requirements.

Mr. Jones does cite *Lifanda v. Elmhurst Dodge, Inc.*, 237 F.3d 803 (7th Cir. 2001) in support of his argument. In *Lifanda*, the court raised the issue of whether TILA required disclosures could be spread across multiple documents, but did not decide the issue. *See id.* at 806 n. 1. At issue was whether the defendant made the three required disclosures concerning Auto Theft Insurance ("ATR") in order to exclude the cost from the finance charge. *Id.* at 806. As evidence that the disclosures were made to the plaintiff, the defendant submitted three documents which each contained one of the three required disclosures. *Id.* The court did not decide whether it was proper to read the three documents together because the parties did not raise the issue. *Id.* at 806 n.1.

The facts in this case are distinguishable from the facts in *Lifanda*. In this case, the GAP Schedule makes all three of the required disclosures clearly and conspicuously. Mr. Jones did not have to look to two or three documents to find the three disclosures. They were all made in the GAP Schedule. Although the court has found that they were not made clearly and conspicuously, all three

16

disclosures were also made in the RISC.  The purpose of the disclosures is to allow the consumer to make an informed decision about whether to purchase GAP insurance.  *See* 15 U.S.C. § 1601(a).  If the disclosures are spread across multiple documents, as occurred in *Lifanda*, there is a danger that the consumer will be mislead about the options available to him.  That danger is not present in this case where all of the disclosures are made in a single document.  The court finds that it is irrelevant that the required disclosures were made in a document other than the RISC as long as the required disclosures were made to the consumer before consummation of the transaction.

*IV. Whether the Required Disclosures May Be Made in a Document Prepared by Someone Other than the Creditor.*

12 C.F.R. section 226.17(a)(1) provides that "[t]he creditor shall make the disclosures required by this subpart."  Mr. Jones argues that the defendants violated 12 C.F.R. section 226.17(a) because the disclosures were made by Stonebridge Insurance Company, who is not a creditor to the transaction.  As support for his argument, Mr. Jones cites *Vallies v. Sky Bank*, 432 F.3d 493 (3rd Cir. 2006).  In *Vallies*, the plaintiff obtained a loan from Sky Bank to purchase a truck from Phill Fitts Ford.  *Id.* at 494.  On the same day that Vallies signed the loan agreement with Sky Bank, he also signed a separate form entitled "GAP

17

Waiver Agreement" which contained the required TILA disclosures to exclude the premium for GAP insurance from the finance charge. *Id.* This separate GAP waiver form was not incorporated into Sky Bank's loan and Sky Bank was not a party to the GAP Waiver Agreement. *Id.* The parties to the GAP Waiver Agreement were Vallies and Fitts Ford. *Id.* The court found nothing in the GAP Waiver Agreement which would have suggested to Vallies that Fitts Ford was acting on the bank's behalf in entering it. *Id.* The court held that the disclosures were improperly made to Vallies because they were made by Fitts Ford, who was not a creditor to the transaction. *Id.* at 496-97.

The present case is distinguishable from *Vallies* because Bill Smith was the creditor to the transaction and Bill Smith made all of the disclosures to Mr. Jones. The TILA defines a creditor as

> a person who both (1) regularly extends . . . consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.

15 U.S.C. § 1602(f). The parallel provision in Regulation Z defines a creditor as

> [a] person who (A) regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract.

18

12 C.F.R. § 226.2(17). Under these two definitions, Bill Smith is the creditor to this transaction. Bill Smith regularly extends consumer credit to customers for the purchase of automobiles and the debt is initially payable to Bill Smith. Therefore, under the TILA, only Bill Smith could make the required disclosures to Mr. Jones. Bill Smith satisfied this requirement by providing Mr. Jones with the RISC and the GAP Schedule. The court finds that it is irrelevant that the GAP Schedule was on a form prepared by Stonebridge Insurance Company since the form was given to Mr. Jones by Bill Smith.

Having concluded that the three disclosures were clearly and conspicuously made to Mr. Jones by the creditor to the transaction before consummation, the court finds that the issues of assignee liability and res judicata are moot.

### Conclusion

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issues of material fact, the court **ORDERS** that the Bankruptcy Court's decision is hereby **AFFIRMED**.

**DONE** and **ORDERED** this the 28th day of September, 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

19